Entered on Docket
November 07, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: November 05, 2007

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>SAIGON PLAZA ASSOCIATION, LLC,<br><br>  Debtor.<br>_____/ | No. 07-40169 LT<br>Chapter 11 |
| SAIGON PLAZA ASSOCIATION, LLC,<br><br>  Plaintiff,<br><br>  vs.<br><br>CALIFORNIA MORTGAGE & REALTY,<br>INC., et al.<br><br>  Defendants.<br>_____/ | A.P. No. 07-4149 |

**MEMORANDUM OF DECISION ON MOTION TO COMPEL
ARBITRATION AND FOR STAY**

Creditor California Mortgage & Realty, Inc. ("CMR") seeks to compel arbitration of the claims based on state law asserted by the above-captioned debtor plaintiff Saigon Plaza Association, LLC (the "Debtor") in its objection (the "Objection to Claim") to the proof of claim filed in the above-captioned case (the "Proof of Claim") by CMR on June 21, 2007 and to stay litigation of all claims asserted therein in the bankruptcy court. The Debtor opposes the motion. The motion came on for hearing on October 1, 2007 and was taken under

submission. During the course of the briefing and argument, the scope of the motion was broadened to include additional claims asserted by the Debtor against CMR in Adversary Proceeding No. 07-4149 AT (the "Adversary Proceeding"). For the reasons stated below, having considered the issues and the applicable law, the Court concludes that the motion to compel arbitration should be granted with respect to the claims governed by state law and denied with respect to the claims governed by bankruptcy law. The Court concludes that the motion to stay litigation of the claims pending the conclusion of arbitration should be granted except with respect to the first claim for relief.

**SUMMARY OF FACTS**

The Debtor owns real property at 380-338 12th Street, Oakland, CA ("the 12th Street property"). On October 17, 2005, the Debtor executed a secured promissory note for $5.75 million in favor of CMR (the "Debt"). The loan was intended to fund the development of restaurants and condominiums on the 12th Street property. The Debt was secured by deeds of trust on the 12th Street property, as well as by other properties owned by the Debtor's members. When the Debtor's principal, John Le Tung ("Tung"), signed the loan documents, he also signed an arbitration agreement providing that all disputes regarding the loan would be subject to mandatory arbitration (the "Arbitration Agreement").

On January 18, 2007, the Debtor filed a voluntary Chapter 11 petition. Shortly thereafter, CMR filed the Proof of Claim in the amount of $4,525,182.68. On June 21, 2007, the Debtor filed the

2

Objection to Claim. In the Objection to Claim, the Debtor asserted that it had received no payout on the loan at the time of closing, although the closing documents said it would receive $3.9 million out of the loan escrow. The Debtor also asserted that CMR had charged interest on funds that the Debtor never received. Finally, the Debtor asserted that, in a letter sent in early 2007, CMR falsely represented that a portion of the loan proceeds had been paid into a trust account held for the Debtor's benefit ("the Trust Account").

The Debtor contended that the alleged facts gave rise to claims for breach of contract, fraud, breach of the covenant of good faith and fair dealing, interference with contract, wrongful foreclosure and unfair business practices, entitling the Debtor to a claim for damages offsetting the Debt. The Objection to Claim also sought disallowance of the Debt pursuant to 11 U.S.C. § 502(d) based on CMR's failure to return to the Debtor property recoverable under Bankruptcy Code provisions, equitable subordination of the Debt, and restitution. On August 1, 2007, the court overruled the Debtor's objections based on § 502(d) and equitable subordination without prejudice to the Debtor's asserting them in an adversary proceeding against CMR.

On September 17, 2007, Debtor filed the Adversary Proceeding, asserting nine claims for relief. The claims for relief asserted in the Complaint are as follows: (1) Lien Avoidance and Recovery of Avoided Transfer pursuant to §§ 544 and 550, (2) Turnover pursuant to § 542, (3) Avoidance of Fraudulent Transfer pursuant to § 548, (4) Avoidance of Fraudulent Transfer pursuant to § 548, (5) Breach of

Contract, (6) Fraud, (7) Unfair Competition pursuant to Cal. Bus. & Prof. Code § 17200 et seq., (8) Equitable Subordination pursuant to § 510(c), and (9) Objection to Claim. The prayer for relief seeks rescission of the loan, lien avoidance based on fraudulent transfer and other grounds, turnover of the loan proceeds, compensatory and punitive damages, restitution, equitable subordination, and disallowance of CMR's claims. The Debtor also demands a jury trial on all issues triable to a jury.

## DISCUSSION

The principal argument made by the Debtor in opposing CMR's motion to compel arbitration is that the Arbitration Agreement is unenforceable because it is unconscionable. However, before addressing this argument, the Court will discuss the enforceability of arbitration agreements in general with respect to claims asserted in a bankruptcy case. See Part A below. The Court will then address the Debtor's unconscionability argument. See Part B below. Finally, the Court will address CMR's motion to stay litigation of the claims pending arbitration. See Part C below.

**A. GENERAL ENFORCEABILITY OF ARBITRATION AGREEMENTS IN BANKRUPTCY**

The Federal Arbitration Act establishes a general congressional policy favoring the resolution of disputes through arbitration. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226-27 (1987). As a consequence of this policy, the party that opposes the enforcement of an arbitration agreement, in this case, the Debtor, bears the burden of demonstrating that the arbitration agreement should not be enforced. Shearson/American Express, 482 U.S. at 227.

4

In determining whether to grant a motion to compel arbitration, the Court must first determine whether the arbitration agreement covers the disputes at issue. It must then decide whether Congress intended to preclude a waiver of the judicial remedies for the rights at issue. <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 625-28 (1985); <u>In re Home Express, Inc.</u>, 226 B.R. 657, 658 (Bankr. N.D. Cal. 1998).

The Arbitration Agreement provides that "any Dispute involving the Loan, including but not limited to claims arising from the origination, documentation, disclosure, servicing, collection or any other aspect of the Loan transaction or the coverage or enforceability of this Agreement, shall be resolved exclusively by binding arbitration under the terms of this Agreement."[1]

The Supreme Court has made it clear that arbitration agreements should be enforced, even when to do so makes the dispute resolution process more complex and even when the dispute is governed by federal statutory law. See <u>Dean Witter Reynolds Inc. v. Byrd</u>, 470 U.S. 213, 218-21 (1985)(reversing Ninth Circuit's decision refusing to enforce arbitration agreement so as to avoid bifurcation of claims subject to arbitration and claims subject to court's exclusive jurisdiction); <u>Shearson/American Express</u>, 482 U.S. at 226-42 (arbitration clause enforced as to claims brought under RICO statute and 1934 Securities Act); <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 25-35

---

[1] Arguably, the bankruptcy law claims asserted by the Debtor do not fall within the scope of the Arbitration Agreement. However, because the Debtor has not raised this issue, the Court will assume that they do.

5

(1991)(arbitration provision enforced as to Age Discrimination in Employment Act of 1967). Based on these authorities the Court easily concludes that it has no discretion to refuse to enforce the Arbitration Agreement as to the claims governed exclusively by nonbankruptcy law. Those claims include the Fifth, Sixth, and Seventh Claims for Relief.

The only remaining question is whether Congress intended to preclude waiver of judicial remedies with respect to the remaining six claims for relief. As stated in Shearson,

> The burden is on the party opposing arbitration...to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent 'will be deducible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes.

482 U.S. at 226-27 (citations omitted). None of the statutes upon which the bankruptcy law claims are based contains an indication of any such intent nor has the Debtor cited any legislative history indicating any such intent. Thus, the Court may refuse to enforce the Arbitration Agreement with respect to these claims only if it concludes that there is an inherent conflict between submitting them to arbitration and "the statute's underlying purposes."

The leading case on this issue in the Ninth Circuit is In re Gurga, 176 B.R. 196 (Bankr. 9th Cir. 1994). In Gurga, a chapter 11 debtor filed an adversary proceding against a creditor for breach of contract, breach of fiduciary duty, conversion, accounting, and turnover. The creditor moved to stay the proceeding pending

6

arbitration and for relief from the automatic stay to proceed with the arbitration. Id. at 199. The bankruptcy court denied the motion. The Bankruptcy Appellate Panel reversed. Id. at 198.

The Gurga Panel found that, except for the turnover claim, the claims asserted were noncore proceedings. Id. at 199. It cited two of its prior decisions and a Third Circuit decision enforcing arbitration clauses with respect to noncore proceedings. See Mor-Ben Ins. Markets Corp., 73 B.R. 644 (Bankr. 9th Cir. 1987); In re Morgan, 28 B.R. 3 (Bankr. 9th Cir. 1983); Hays and Co. V. Merrill Lynch, 885 F.2d 1149 (3rd Cir. 1989). Id. at 200. The Panel found no explicit evidence in either the relevant statutes or the legislative history that Congress intended bankruptcy courts to refuse to enforce arbitration agreements with respect to noncore claims. It further found no inherent conflict with the Bankruptcy Code in enforcing arbitration agreements with respect to noncore claims. Id.

The instant case is distinguishable to some extent in that all of the claims asserted here are core proceedings. The claims based on bankruptcy law are clearly core. However, even the claims based on nonbankruptcy law are core because they constitute counterclaims to the Proof of Claim. See 11 U.S.C. 157(b)(2)(C)(designating as core proceedings counterclaims to proofs of claim). Courts have declined to draw a bright-line rule regarding the treatment of arbitration agreements in core bankruptcy proceedings. Instead, in core proceedings, the bankruptcy court must consider "whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict

7

with the purposes of the Code." In re Nat'l Gypsum Co., 118 F.3d 1056, 1067 (5th Cir. 1997).

In In re Gandy, 299 F.3d 489 (5th Cir. 2002), the Fifth Circuit addressed the issue of whether to enforce an arbitration agreement with respect to a proceeding involving a mixture of bankruptcy and state law claims. The proceeding combined avoidance claims under 11 U.S.C. §§ 544 and 548 with state law claims for RICO conspiracy, insider fraud, alter ego, and substantive consolidation. The Court concluded that none of the claims should be sent to arbitration. It found that the principal purpose of the debtor's suit was lien avoidance and that therefore all of the claims should be determined by the bankruptcy court rather than by an arbitrator.[2]

In this case, unlike in Gandy, the principal purpose of the Adversary Proceeding is to invalidate the loan agreement and to cancel the Debt and the liens securing it based on state law claims of breach of contract and fraud. With one exception, the claims based ostensibly on bankruptcy law are merely derivative of the state law claims. While the claims based exclusively on state law are core, submitting them to arbitration would clearly not conflict with the purposes of the Bankruptcy Code.[3]

---

[2] Several factors influenced the Gandy court's decision, including the fact that funds had been transferred to foreign trusts and that substantive consolidation could not be granted by an arbitrator.

[3] At the hearing on the motion to compel arbitration, the Court, sua sponte, raised the issue of whether enforcing an arbitration agreement was in conflict with a fundamental policy of federal law where the claims were triable to a jury and a timely jury demand had been made. Having considered this issue further, the Court concludes that, where the state law claims are governed

8

On the other hand, it would conflict with purposes of the Bankruptcy Code to enforce the Arbitration Agreement with respect to the claims based on bankruptcy law, even if those claims are derivative. Congress created the bankruptcy court as a court of special expertise. Enforcing pre-dispute agreements to waive the right to have bankruptcy law issues determined by the bankruptcy court would be contrary to the purposes for which the bankruptcy court was created. That the bankruptcy law fraudulent transfer claims are based on the same nucleus of facts as the state law claims does not alter this conclusion. See In re Friedman's Inc., 372 B.R. 530, 546 (Bankr. S.D. Ga. 2007)(fraudulent transfer claims should not be recharacterized as disguised state law claims absent a showing that plaintiff has failed to state a claim under the applicable fraudulent transfer statute). Thus, the claims based on bankruptcy law--that is, all of the claims except the Fifth, Sixth, and Seventh Claims for Relief--will be adjudicated by the Court.

**B. UNCONSCIONABILITY**

As noted above, the principal argument made by the Debtor for refusing to enforce the Arbitration Agreement is that it is unenforceable because it is unconscionable. Under California law, an arbitration agreement is enforceable "save upon such grounds as exist for the revocation of any contract," including unconscionability. Cal. Civ. Proc. Code § 1281 (West 2007); Flores v. Transmerica

---

by California law, this is no basis upon which to refuse to enforce an arbitration clause. See Grafton Partners L.P. v. Superior Court, 36 Cal. 4th 944, 955 (2005)(holding that pre-dispute contractual waivers of jury trials are unenforceable does not extend to arbitration agreements).

9

HomeFirst, Inc., 93 Cal. App. 4th 846, 850 (2001). A contract provision must be both procedurally and substantively unconscionable to be unenforceable. A sliding scale analysis is employed so that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required...and vice versa." Nagrampa v. Mailcoups, 469 F.3d 1257, 1280 (9th Cir. 2006). In Nagrampa, the court found that minimal procedural unconscionability coupled with more egregious substantive unconscionability warranted a finding of overall unconscionability. Id. at 1294. The Debtor contends that the Arbitration Agreement is both procedurally and substantively unconscionable. The Court concludes that it is neither.

**1. Procedural Unconscionability**

Oppression and surprise are the cornerstones of procedural unconscionability. Flores, 93 Cal. App. 4th at 853 (2001). Oppression exists when the parties have unequal bargaining power and no opportunity for negotiations, leaving the weaker party with no meaningful choice. Id. An adhesion contract, or "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms," is likely to be found oppressive, especially if the parties have unequal bargaining power. Id. Surprise, the second element of procedural unconscionability, is present when the relevant term is "hidden in a prolix printed form drafted by the party seeking to enforce [it]." Id.

In Nagrampa, the plaintiff, a neophyte businesswoman, entered into a franchise agreement with the defendant, Mailcoups, after

receiving their circular in the mail. Nagrampa, 469 F. 3d at 1265. Nagrampa signed a 35 page franchise agreement that contained an arbitration provision on page 25. Id. at 1283. Defendant Mailcoups conceded that the contract was non-negotiable and was presented to Nagrampa on a take-it-or-leave-it basis. Id. at 1281. In fact, Nagrampa attempted to negotiate one of the contractual terms, but was "rebuffed by Mailcoups." Id. at 1265. Under these facts, the Ninth Circuit found "the evidence of procedural unconscionability ...minimal" yet sufficient to support a finding of unconscionability when combined with strong evidence of substantive unconscionability. Id. at 1284.

The Flores case presents a stronger showing of procedural unconscionability than Nagrampa. In Flores, the plaintiffs were a couple, ages 80 and 76, who obtained a reverse mortgage on their home from the defendant, Transamerica HomeFirst, Inc. Flores, 93 Cal. App. 4th at 849. The Floreses signed a 14 page agreement that contained an arbitration clause on page 11. Id. The "Important Information for Borrowers" provided by HomeFirst indicated that the borrowers were required to sign the standardized loan documents in order to obtain a reverse mortgage. Id. at 853. The Floreses were also told that HomeFirst was the only lender in California that provided reverse mortgages. Id. The court found this agreement to be procedurally unconscionable because it was drafted and presented by a party with superior bargaining power on a take-it-or-leave-it basis. Id. at 854.

In the case before us, there is no evidence of oppression. The Debtor is a limited liability corporation engaged in the development of a tract of commercial property. Although Debtor's principal is a Vietnamese immigrant, his business experience exceeds that of the first-time business owner in Nagrampa. No evidence was presented that the Debtor had limited or no bargaining power as in Flores. No negotiations took place between the Debtor and CMR. However, there is no evidence that the Debtor attempted to negotiate any terms and that CMR refused to do so or presented the loan documents to Debtor on a take-it-or-leave-it basis. The Debtor admitted that he signed the loan documents without reading them and without initiating negotiations over their terms because he was in a hurry.

The Debtor, a business entity, cannot remain blissfully ignorant of the terms of an agreement and subsequently avoid terms that it finds unfavorable. Because the Debtor is more sophisticated than the Nagrampa and Flores plaintiffs and because the Debtor made no attempt to negotiate the contractual terms, the evidence does not support a finding of oppression.

Likewise, there is no reasonable basis upon which the Debtor may assert surprise. Unlike the arbitration agreements in both Nagrampa and Flores, which were buried in lengthy contracts, the Arbitration Agreement was a stand-alone agreement that required a separate signature. Although it was presented with many other documents requiring signatures, there is no evidence that CMR did anything to prevent the Debtor from scrutinizing the Arbitration Agreement before signing it.

Because the procedure by which the Arbitration Agreement was procured by CMR was neither oppressive nor calculated to catch the Debtor by surprise, the Court concludes that the Debtor has failed to establish the necessary element of procedural unconscionability.

**2. Substantive Unconscionability**

An arbitration agreement is substantively unconscionable if it is overly harsh, lacks mutuality, or contains one-sided provisions. Nagrampa, 469 F. 3d at 1280. In Nagrampa, the court held that the arbitration agreement was substantively unconscionable because it allowed the defendant, but not the plaintiff, access to judicial remedies. In addition, the arbitration agreement contained a forum selection clause providing that arbitration would take place in Boston, Massachusetts--a convenient location for the defendant corporation and an inconvenient location for the plaintiff, a California resident.

The Flores court also found the arbitration agreement to be substantively unconscionable. Flores, 93 Cal. App. 4th at 855. The agreement in Flores allowed the lender "to proceed with foreclosure despite the pendency of disputes brought to arbitration" and provided that arbitration must not delay or adversely affect the lender's ability to exercise its own remedies. Id. at 854. The Flores agreement explicitly differentiated between the borrower's and the lender's rights and did so in a particularly misleading way. The agreement stated that "arbitration may not, however, without your consent, delay or adversely affect your ability to exercise any of the remedies available to you under this Loan Agreement or under the

13

Security Instrument." Id. at 850. The document later defined "you", and "your" to refer only to the lender. Id.

The Debtor argues that the Arbitration Agreement is similarly one-sided. The Arbitration Agreement exempts certain actions by CMR from arbitration, including "actions by the lender to judicially or non-judicially foreclose on the note and deed of trust (or mortgage) for the Loan, to enjoin waste, to collect rents, interpleader actions or actions for a receiver, to recover possession, ejectment or relief from the automatic stay in bankruptcy, or to obtain relief through governmental agencies." The Arbitration Agreement does not specify the location of the arbitration, but it does state that arbitration will be filed with the American Arbitration Association office nearest to CMR's place of business in San Francisco, California.

The Court concludes that these provisions do not render the Arbitration Agreement substantively unconscionable. Although the Arbitration Agreement allows CMR to resolve certain claims outside arbitration, it does not do so in an unreasonable manner. Unlike the agreement in Flores, it does not allow CMR to step outside a pending arbitration any time it chooses. It simply allows CMR to take necessary steps to protect its collateral in ways that would be impossible in the context of arbitration. Moreover, the Arbitration Agreement also allows the Debtor to pursue provisional equitable remedies, such as to obtain a preliminary injunction of an improper nonjudicial foreclosure sale.

In addition, the Arbitration Agreement lacks the onerous cross-country forum selection clause that was present in Nagrampa. Both

14

parties, as California corporations, would benefit from an arbitration being conducted in California. Because the Arbitration Agreement is not unfairly one-sided, either by its terms or due to an inconvenient forum selection clause, the Court concludes that it is not substantively unconscionable.

Since the agreement is neither procedurally nor substantively unconscionable, the Court concludes that it is enforceable under California law.

**C. MOTION FOR STAY**

CMR has also moved the Court for a stay of litigation of all the claims asserted in the Adversary Proceeding pending conclusion of the arbitration. As to those claims submitted to arbitration, granting such a stay is mandatory. See Friedman at 549. As to the claims retained by the Court, granting such a stay is discretionary. The decision is primarily one of judicial economy. Where the completion of the arbitration may resolve or shed light on the nonarbitrable issues and claims, a stay may be appropriate. Id. at 550.

As discussed above, except for the First Claim for Relief, the Court finds all of the claims based on bankruptcy law to be derivative of the state law claims. Therefore, it seems appropriate to stay litigation of those claims. However, the First Claim for Relief is distinct from the other claims asserted in the Adversary Proceeding. It seeks to avoid CMR's security interest on the Trust Account pursuant to 11 U.S.C. § 544 on the ground that it was unperfected at the time the Debtor filed its bankruptcy petition. This claim is legally and factually severable from the other claims

15

asserted in the Complaint. It may well be determinable by summary judgment. There is no reason to delay adjudicating this claim pending arbitration of the Fifth, Sixth, and Seventh Claims for relief.

**CONCLUSION**

CMR's motion to compel arbitration will be granted with respect to the Debtor's Fifth, Sixth, and Seventh Claims for Relief and denied with respect to the remaining claims for relief. CMR's motion to stay litigation of the claims pending arbitration will be granted with respect to all of the claims except the First Claim for Relief. Counsel for CMR is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

Robert B. Kaplan
Jeffer, Mangels, Butler & Marmaro LLP
Two Embarcadero Center, Fifth Floor
San Francisco, CA 94111

Steven B. Sacks
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111