**JEFFERY D. TROWBRIDGE, Bar No. 100390**
Attorney at Law
180 Grand Avenue, Suite 1550
Oakland, CA 94612

Telephone: (510) 893-5300
Facsimile: (510) 832-7228
Email: jdt3656@sbcglobal.net

Attorney for CALIFORNIA MORTGAGE
AND REALTY, INC., et al.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 07-40169 |
| SAIGON PLAZA ASSOCIATION, LLC, | Chapter 11 |
| Debtor. | OBJECTION TO FIRST AMENDED DISCLOSURE STATEMENT FOR SECOND AMENDED PLAN OF REORGANIZATION |
| | Date: 3/16/09<br>Time: 2:00 p.m.<br>Courtroom: 201 (1300 Clay St., Oakland, CA) |

California Mortgage and Realty, Inc., CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, First Street Commercial Mortgage Fund, LLC, Joseph and Josephine DiBenedetto, Trustees of the Joseph and Josephine DiBenedetto 1993 Trust, Westamerica Bank Custodian FBO Arnold H. Mentz IRA, the Hammerman Family Partnership, John Hammerman, General Partner, John Hammerman, Trustee, Hammerman Family Revocable Intervivos Trust dated February 15, 2005, Jason Hammerman, Julie Hammerman, Atul K. Tandon and Shobha Tandon, Trustees of the Atul K. And Shobha Tandon Intervivos Trust dated July 19, 2001, Lucas and Genevieve Dang, Trustee of the 1997 Lucase and Genevieve Dang Revocable Trust, the TD/CM Profit Sharing Plan, Ted W. Dang, Trustee, and Marietta Mentz and Arnold H. Mentz as joint tenants with rights of survivorship (referred to jointly, for purposes of this objection as "CMRI"), by and through their attorney, Jeffery D. Trowbridge, object to the First Amended Disclosure Statement for Second Amended Plan of Reorganization as follows:

1

# I. INTRODUCTION AND STATEMENT OF THE CASE.

Saigon Plaza filed its Chapter 11 Bankruptcy Case on January 18, 2007, and an order for relief was entered at that time. This bankruptcy concerns a single real property commonly known as 380-388 12th Street, Oakland, California (the "Property"). Such bankruptcy was filed for the purpose of staying foreclosure on the Property by CMRI.

On May 11, 2007, CMRI filed a proof of claim in the Saigon Plaza Chapter 11 case. Thereafter, on June 21, 2007, Saigon Plaza filed its objection to CMRI's proof of claim ("Objection to Claim"). Subsequently, on August 30, 2007, CMRI filed its Motion for Order Compelling Arbitration and for Stay with respect to Saigon Plaza's Objection to Claim ("Motion for Order Compelling Arbitration"). Thereafter, in partial response to CMRI's Motion for Order Compelling Arbitration, Saigon Plaza filed an adversary proceeding against CMRI on September 17, 2007.

The Court issued its Order Granting in Part Motion to Compel Arbitration and for Stay on November 27, 2007. Pursuant to such order, this Court stayed Saigon Plaza's prosecution of the Fifth, Sixth and Seventh Claims for Relief alleged in the adversary complaint pending entry of final judgment on arbitration award under the auspices of the American Arbitration Association ("Final Award"). The order further stayed Saigon Plaza's prosecution of the Second, Third, Fourth, Eighth and Ninth Claims for Relief alleged in its adversary complaint pending the entry of the Final Award.

The First Claim for Relief contained in Saigon Plaza's adversary complaint incorporates Paragraph 28, which alleges that CMRI has previously asserted that the loan which was made by the Lender to Saigon Plaza was funded to a trust or escrow account and "held by [CMRI] as agent." Paragraph 29 of Saigon Plaza's adversary complaint further alleges that CMRI claims that it held a perfected security interest in the Saigon Plaza loan funds which were disbursed into the trust or escrow account. On November 20, 2007, Defendants filed an Answer to the First Claim for Relief alleged in the Saigon Plaza adversary complaint.

CMRI moved for relief from stay in order to complete its foreclosure sale of the Property. Pursuant to stipulation of the parties, the Court issued its order granting relief from

stay on certain conditions. Most, recently, on January 29, 2009, pursuant to stipulation, a Further Order re Relief from Stay was issued containing the following provisions:

> "2. The Stay Relief Order shall be modified to provide as follows:
>
> (a) the Automatic Stay shall be immediately terminated without further order of this Court as to the holder or holders (collectively, the "Holder") of the Note and the Deed of Trust (as those terms are defined in the Motion) encumbering the real property owned by the Debtor located at and commonly known as 380-388 12th Street, Oakland, California (the "12th Street Property"), which secures such Note, to permit the Holder to exercise the Holder's state law rights and remedies with respect to the Debtor's interest in the 12th Street Property, including to conduct a trustee's sale under such Deed of Trust, if any of the following occurs:
>
> (1) The Debtor shall not have set and noticed, on or before the dates necessary for the same, a hearing before this Court on March 16, 2009, at 2:00 p.m., on approval of the disclosure statement (or any amended disclosure statement) filed by the Debtor; or
>
> (2) At such hearing, the Court determines that the plan of reorganization filed in connection with the disclosure statement does not have a reasonable possibility of being confirmed within a reasonable time (the confirmability of such plan and the timeliness of achieving the same shall be subjects to be addressed at such hearing)."

## II. **STATEMENT OF FACTS.**

John Le Tung dba and/or Saigon Plaza purchased and was attempting to develop real property at 380-388 12th Street, Oakland, California. He and his family members owned other businesses and homes and had engaged in several other financing transactions prior to their involvement with CMR Mortgage Fund, LLC. Specifically, with regard to the 12th Street property, they had negotiated and obtained financing to purchase the property and then, apparently, entered into a very similar financing arrangement for construction with Roger Woo, Loretta Woo and Wing Har Ng ("Woo/Ng Secured Claim") to that which would subsequently be entered into with CMR Mortgage Fund, LLC. According to the filings in Saigon Plaza's bankruptcy proceeding, including the proposed Second Amended Chapter 11 Plan of Reorganization, Saigon Plaza has failed to repay the Woo/NG Secured Claim, as well as the CMRI secured claim.

On or about October 17, 2005, Saigon Plaza executed and delivered to CMR Mortgage Fund, LLC ("Original Lender"), that certain Promissory Note (Commercial) in the original

principal sum of $5,750,000.00 ("Note"). The Note executed by Saigon Plaza in favor of Original Lender required payments to be made of $62,291.67 per month commencing on December 1, 2005, through and including October 1, 2008.

In order to secure payment of all outstanding obligations owed by Saigon Plaza to Original Lender, pursuant to the Note, Saigon Plaza, as trustor, made, executed and delivered that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, in favor of California Mortgage and Realty, Inc. ("CMRI"), as trustee, for the benefit of Original Lender, as beneficiary ("Deed of Trust"), with respect to the Trust Property (as that term is defined in the Deed of Trust), which includes the real property commonly known as 380-388 12th Street, Oakland, California ("12th Street Property"). The Deed of Trust was recorded in the Official Records of the Alameda County Recorder's Office on October 26, 2005.

In connection with the execution of the Note and Deed of Trust, Saigon Plaza also executed and delivered to Original Lender that certain Interest Charge on Funding Agreement ("Funding Agreement"). The Note, Deed of Trust and Funding Agreement are hereinafter collectively referred to as the "Secured Loan Documents." The Funding Agreement provided that the loan proceeds evidenced by the Note would be deposited into an escrow account as follows:

> "These funds will be deposited into the loan escrow on October 21, 2005. Interest charge will begin on October 21, 2005."

The obligations of Saigon Plaza under the Secured Loan Documents were further personally guaranteed in a writing made effective October 17, 2005, by individuals and an entity purportedly having interests in Saigon Plaza, i.e., John Le Tung, Muoi Tran, Hue-To, Hue Ngoc To Ly (aka Hue Ngoc To), and New Saigon Supermarket, Inc.

Pursuant to the Operating Agreement of Original Lender made and entered into effective January 21, 2001 ("Operating Agreement"), which was executed by CMRI, Original Lender was established and CMRI was appointed as its manager and as the servicing agent for and authorized to act on behalf of Original Lender. Section 1.18 of the Operating Agreement

4

defines "Manager" as CMRI. Furthermore, Section 3.01 of the Operating Agreement provides as follows:

> "Subject to the provisions of the Articles and this Agreement relating to actions required to be approved by the Members, if any, the business, property and affairs of [CMR Mortgage Fund, LLC] shall be managed and all powers of [CMR Mortgage Fund, LLC] shall be exercised by or under the direction of the Manager."

Furthermore, Section 10.02 of the Operating Agreement provides as follows:

> "The Manager may act as servicing agent with respect to all [CMR Mortgage Fund, LLC] loans and may manage all of [CMR Mortgage Fund, LLC's] assets."

Subsequent to the recording of the Deed of Trust, the Note and Deed of Trust were partially assigned by Original Lender to CMR Mortgage Fund II, LLC ("CMR II"), First Street Commercial Mortgage Fund, LLC ("First Street"), Joseph and Josephine DiBenedetto, Trustees of the Joseph and Josephine DiBenedetto 1993 Trust ("DiBenedetto Trust"), Westamerica Bank Custodian FBO Arnold H. Mentz IRA ("Mentz IRA"), the Hammerman Family Partnership, John Hammerman, General Partner ("Hammerman Family Partnership"), John Hammerman, Trustee, Hammerman Family Revocable Intervivos Trust dated February 15, 2005 ("Hammerman Trust"), Jason Hammerman, Julie Hammerman, Atul K. Tandon and Shobha Tandon, Trustees of the Atul K. And Shobha Tandon Intervivos Trust dated July 19, 2001 ("Tandon Trust"), Lucas and Genevieve Dang, Trustee of the 1997 Lucase and Genevieve Dang Revocable Trust ("Dang Trust"), the TD/CM Profit Sharing Plan, Ted W. Dang, Trustee ("TD/CM Plan"), and Marietta Mentz and Arnold H. Mentz as joint tenants with rights of survivorship ("Mentz" and collectively, the "Assignees"). CMR Mortgage Fund, LLC, and the Assignees shall hereinafter collectively be referred to as the "Lender."

In connection with the partial assignment of the Note and Deed of Trust by CMR Mortgage Fund, LLC, to the Assignees, each of the Assignees executed a separate written Lender Servicing and Equity Interest Agreement (collectively, the "Servicing Agreements") with CMRI. The Servicing Agreements each provide as follows:

> "Section 1 - Servicing the 'Note' and 'Deed of Trust'.
>
> This loan servicing agreement is made between '[CMRI]', a licensed California

Real Estate Broker and the undersigned 'LENDER.' 'LENDER' hereby authorizes and instructs '[CMRI]' and '[CMRI]' agrees to service the '[Note]' and '[Deed of Trust]' and in that connection, to do the following:

A. To receive any and all payments due 'LENDER' on the '[Note]', which includes but is not limited to all monthly payments, all late payments and all payoffs in full or in part. '[CMRI]' is authorized to direct any payment to be made payable to '[CMRI's]' Trust Account;

B. To endorse to '[CMRI's]' Trust Account any checks or money orders payable to 'LENDER' and to immediately deposit same in '[CMRI's]' Trust Account which is to be maintained in accordance with such laws and rules applicable thereto and as to which '[CMRI]' will not commingle its assets; ..."

Pursuant to the Operating Agreement and the Servicing Agreements, CMRI, as Manager of CMR Mortgage Fund, LLC, and as Servicing Agent for the Assignees, opened a deposit account with Bank of America known as the California Mortgage and Realty Trust Account A (the "Trust Account") and executed a signature card in favor of Bank of America. All loan proceeds disbursed to Saigon Plaza pursuant to the Note were deposited in the Trust Account.

Various Events of Default (as that term is defined in the Secured Loan Documents) occurred under the Secured Loan Documents because of, inter alia, the failure of Saigon Plaza to pay the monthly payments required to be paid pursuant to the Note on June 1, 2006, and thereafter.

After the funding of the loan and over the next several months, CMRI paid construction draw requests made by Saigon Plaza through Builders Control. During about August, 2006, Saigon Plaza terminated its then General Contractor, Adamant Fabrication, and construction ceased.

On August 23, 2006, CMRI recorded a Notice of Default and Election to Sell in the Official Records of the Alameda County Recorder's Office, thereby commencing foreclosure proceedings pursuant to the Deed of Trust. During about September, 2006, Saigon Plaza began negotiating with a replacement General Contractor. It advised CMRI that it had entered into a new construction contract with Beacon Development, Inc., effective in September, 2006, in the amount of $5,500,000. CMRI pointed out that less than $3,000,000 in construction funds were remaining in the Trust Account and that Beacon's construction contract could not be completed with the existing construction loan, which loan was already in default. Saigon Plaza asked that

1 CMRI pay future construction draw requests from Beacon during the pendency of the
2 foreclosure proceedings and represented that it would be seeking additional construction
3 financing from other sources.
4     Saigon Plaza and CMRI entered into a written agreement entitled September 2006
5 (Loan 05-058) Forbearance Agreement and Release effective September 8, 2006 ("Release").
6 In such Release, CMRI agreed to pay additional construction draws from the escrowed
7 construction loan funds so long as construction was progressing and so long as Saigon Plaza
8 was making reasonable efforts to obtain the additional financing it would need to complete the
9 project. In such written agreement, Saigon Plaza released CMRI, CMR Mortgage Fund, LLC,
10 and the Assignees from any and all claims it might have against them. Such Release made it
11 clear that foreclosure proceedings would continue pending Saigon Plaza actually obtaining
12 additional financing to bring payments due to CMRI current and to pay for the remaining
13 construction. CMRI paid several construction draws over the next several months out of the
14 Trust Account. However, Saigon Plaza never obtained further financing and failed to bring
15 payments current which were due to CMRI. On December 5, 2006, CMRI recorded a Notice of
16 Trustee's Sale in the Official Records of the Alameda County Recorder's Office, setting a
17 trustee's sale for the 12th Street Property pursuant to the Deed of Trust on December 28, 2006,
18 at 12:00 p.m., which was thereafter postponed to January 18, 2007 at 12:00 p.m.
19     CMRI then notified Saigon Plaza that it would be exercising its security rights under the
20 UCC as to the remaining monies in the Trust Account held under CMRI's name. On January
21 12, 2007, CMRI applied the balance of $2,015,667.25 of the proceeds of the Note which were
22 previously disbursed into the Trust Account pursuant to the Secured Loan Documents, by
23 withdrawing the monies from the Trust Account, and applied such monies to reduce the balance
24 of the Note. The current balance owed to CMRI, after crediting the above-described amount, is
25 approximately $6,300,000.00.
26     **III. <u>STATEMENT OF GROUNDS FOR OBJECTION TO DISCLOSURE**
27 **STATEMENT.</u>**
28     CMRI respectfully submits that the disclosure statement lacks "adequate information"

7

upon which a hypothetical reasonable investor could make an informed judgment about the proposed plan (Bankruptcy Code Section 1125; Bankruptcy Rule 3017). Furthermore, CMRI submits that the plan disclosed is not feasible and thus not likely to be confirmed.

The Debtor's disclosure statement and plan indicate that its reorganization is wholly premised upon success in affirmative, but uncertain litigation against CMR. The Debtor's Overview of Plan is purely speculation. The Debtor says "if" litigation against CMR is successful, it "may" result in creation of a fund of "up to" approximately $2,000,000. Debtor offers no evaluation of its actual chances of success in such litigation or, if successful, its chances of actually collecting such amount or any amount from CMR and/or its investors. At least one of the defendants, CMR Mortgage Fund, LLC, is currently in its own bankruptcy proceeding and there is no certainty that the other defendants have means with which to pay a judgment, if any. The lack of merit of Debtor's litigation as against CMR is discussed in Section IV below.

The disclosure statement states Debtor's opinion of value of the sole asset of the bankruptcy estate at $1,000,000 to $2,000,000, based upon projections based upon a 2005 appraisal. Such appraisal is hopelessly out of date and by no means represents the current fair market value of the property. CMRI estimates the current fair market value of the property at $850,000 or less. CMRI is informed and believes that the existing construction on the property will likely need to be completely demolished and removed, given its exposure to the weather and deterioration over the past 2 years since construction ceased. Debtor has provided no support whatsoever for its contention that the "completed Project would be worth from $8.5-13 million." It has offered no information about how it might finance construction which it estimates at up to $5,000,000. Furthermore, it is CMRI's information that Debtor's estimate of remaining construction costs was based upon a proposal to complete the project which it received from its prior contractor early in 2007 (after construction had ceased). Such proposal is also well out of date and does not reflect deterioration of the project in the weather and elements over the past 2 years and the possibility that the project would require complete demolition and new construction from scratch.

8

Debtor has also failed to disclose any potential sources of such financing in its disclosure statement and Objecting Parties submit that no such sources presently exist. Had there existed any chance whatsoever of obtaining such financing, than presumably Debtor would have disclosed such sources. Obviously, even recovery by the Debtor of $2,000,000 in the speculative lawsuit against CMRI (which, CMRI submits is extremely unlikely), would be nowhere close to the amount needed to restart and complete the proposed project.

The Debtor's plan provides that, if CMRI is successful in the litigation, then Debtor would either convey the property to CMRI or, "at its option, would pay these holders cash in the amount of the allowed Secured Claim." The balance on CMRI's secured claim, as of February 25, 2009, was approximately $6,300,000. If CMRI is successful in the litigation, the only possible result will be that the Debtor will be turning the property over to it (given that the likelihood of the Debtor having the means at such time to pay "cash in the amount of the allowed Secured Claim" would be essentially "0"). However, during the pendency of the litigation, CMRI will be further deprived of its security and will be subject to further losses of equity and potential earnings on the current value of the property. The Debtor does not disclose any ability to pay cash collateral payments to CMRI during the pendency of the litigation. Obviously, there is no possibility of generating income from the property in its present condition.

Debtor's disclosure statement further makes no contention that it has any defense against what it describes as $4.9 million in secured claims by Woo/Ng. Therefore, even if Debtor were 100% successful in connection with its objection to CMRI's claim, the sole property owned by Debtor's bankruptcy estate would still only be worth a fraction of the secured claims against it and there would be virtually no chance that Debtor could retain the property.

Debtor would almost certainly find itself in a liquidation or further reorganization, and/or more likely, simply the loss of its sole asset in a relief from stay proceeding, regardless of the outcome of the litigation it describes in its disclosure statement.

Debtor offers no disclosure or plan as to how it intends to preserve the property during

what could be litigation spanning over 2 additional years or more in the course of the various proceedings and potential appeals. Property taxes and insurance premiums will be due on such property during such extended time period. In order to protect and preserve such property, it should be secured and protected by 24 hour security. Debtor's disclosure statement fails to provide adequate, or any, information as to how it intends to meet such ongoing obligations.

Finally, Debtor's plan apparently leaves the current manager of Debtor, John Le Tung, in complete control of Debtor and of the implementation of the proposed plan. Unfortunately, Mr. Le Tung has shown little ability to successfully manage or develop the property. His continuation in management of the property would not be likely to result in the successful completion of a bankruptcy plan. Debtor's disclosure statement and plan is devoid of any information or proposal as to how it might afford or employ a professional property manager/developer to implement a successful plan.

### IV. LEGAL ISSUES RE CLAIMS BETWEEN SAIGON PLAZA AND CMRI.

CMRI submits that Saigon Plaza's claims against it are without merit and that Debtor is likely to be unsuccessful in the litigation upon which it solely bases its proposed Chapter 11 Plan. Saigon Plaza's protests that CMRI did not have a perfected security interest in the Trust Account in which the construction funds were continuously held are without merit. Perfection of a security interest in a deposit account (defined in California Commercial Code Section 9102(a)(29) as including a demand, time, savings, passbook or other similar account maintained with a bank) occurs when the secured party obtains and maintains "control" of such an account (California Commercial Code Section 9314(b)). California Commercial Code Section 9104(a)(3) provides that "control" over a deposit account occurs when "[t]he secured party becomes the bank's customer with respect to the deposit account." The Official Uniform Commercial Code Comment to Section 9104(a)(3) provides that:

> "Under subsection (a)(3) a secured party may obtain control by becoming the bank's 'customer' as defined in Section 4-104. As customer, the secured party would enjoy the right (but not necessarily the exclusive right) to withdraw funds from, or close, the deposit account."

There is no dispute in the instant case that CMRI, and only CMRI, was the bank's

customer with regard to the deposit account in which the funds in dispute were held. As such, it had a perfected security interest in such funds and was entitled, under the ruling set forth in Kearns, supra, to "foreclose" on such funds without affecting in anyway the security interest in Saigon Plaza's real property. Note: This case is different from Security Pacific National Bank vs. Wozab (1990) 51 Cal.3d 991, where the bank potentially lost a security interest in a customer's real property by taking funds from deposit accounts with the bank which were solely in the name of a director of the corporate customer (i.e., not accounts in the bank's own name).

Alternatively, CMRI would have a perfected interest in the money in the Trust Account pursuant to California Commercial Code Section 9313(a). A secured party perfects a security interest in money by taking possession thereof (id.). In In re Gemini at Dadeland (Bky. S.D. Fla., 1982) 24 B.R. 57, 59, the Court concluded that the secured creditor, Irving Trust, held a perfected security interest in a bank account maintained in the name of the debtor at Biscayne Bank because Biscayne Bank held the funds as Irving Trust's agent. Similarly, in In re O.P.M. Leasing Services, Inc. (Bky. N.Y., 1985) 46 B.R. 661, the Court held that a security interest in money was perfected where it was deposited by an agent for the secured creditor into a bank account (id., at p. 670). Such interest was perfected as of the date of the deposit, which in our case, took place more than 2 years prior to the bankruptcy filing by Saigon Plaza.

Saigon Plaza is seeking to amend its adversary complaint to add a Tenth Claim for Relief alleging a "one-action" rule violation under California Code of Civil Procedure Section 726(a). This exact issue was recently considered and resolved by the U.S. Bankruptcy Appellate Panel for the Ninth Circuit. In Kearns vs. Transamerica Home Loan (9th Cir., 2004), the Court considered the question as to whether the exercise of non-judicial remedies against personal property collateral under California Commercial Code Section 9604 renders unenforceable a lien on real property by virtue of California Code of Civil Procedure Section 726. The Court held as follows:

> "Reading the California statutes together, we conclude that Commercial Code Section 9604(a) clarifies (even for consumer loans) the 'security-first' principle of Code of Civil Procedure Section 726 by providing that mixed real and personal property security may, so long as the debt is not reduced to judgment, be pursued nonjudicially in any sequence without rendering unenforceable a real

property lien" (id., at p. 821; emphasis added).

Therefore, it is submitted that the Debtor's litigation against CMRI, upon which its disclosure statement and plan is solely based, will likely be unsuccessful.

**V. <u>CONCLUSION</u>.**

WHEREFORE, Objecting Parties respectfully submit that the Court should not approve the first amended disclosure statement and that it should determine that the plan is not feasible and thus not confirmable. Therefore, Objecting Parties should be granted immediate relief from stay to pursue their non-judicial foreclosure remedy against the property.

Dated: March 5, 2009

                                          Respectfully submitted by,

                                          LAW OFFICES OF
                                          JEFFERY D. TROWBRIDGE

                                          By: /s/ Jeffery D. Trowbridge
                                              JEFFERY D. TROWBRIDGE,
                                          Attorney for CMRI, et al.