SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
STEVEN B. SACKS, Cal. Bar No. 98875
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:  415-434-9100
Facsimile:   415-434-3947
Email: ssacks@sheppardmullin.com

Counsel for Debtor and Debtor in Possession
SAIGON PLAZA ASSOCIATION, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>SAIGON PLAZA ASSOCIATION, LLC,<br>a California limited liability company<br><br>Debtor, | Case No. 07-40169<br><br>Chapter 11<br><br>**RESPONSE TO OBJECTIONS TO APPROVAL OF DISCLOSURE STATEMENT**<br><br>Date: March 16, 2009<br>Time: 2:00 p.m.<br>Court: Courtroom 201, 1300 Clay St., Oakland, CA |

Debtor and Debtor in Possession Saigon Plaza Association, LLC ("Saigon") hereby responds to the objections filed by California Mortgage & Realty, Inc. and affiliated parties (collectively, "CMR") and jointly by Wing Har Ng, Roger Woo and Loretta Woo (the "Woo/Ng Claimants"):

I.

INTRODUCTION

Contrary to CMR's objections, the Debtor's First Amended Disclosure Statement provides adequate information to enable an informed judgment about the proposed plan of

-1-

reorganization ("Plan") under the circumstances of this case. CMR's disagreement with the Debtor about the likelihood of the Debtor's success in the litigation against CMR should not prevent the Court from approving the Disclosure Statement and proceeding with Plan confirmation.

The Plan proposed by the Debtor treats all creditors, including CMR, appropriately while allowing the Debtor to obtain resolution of its claims with regard to avoidance of $2 million in transfers and to the validity of CMR's lien on the Debtor's real property. The Court can expedite consideration of the litigation so that speculation about its outcome is unnecessary. The property can and will be listed for sale so that its condition and maintenance are not at issue.

## II.

## RESPONSE TO CMR'S STATEMENT OF FACTS

CMR uses much of its objection to give a lengthy, unsupported recitation of its view of the pertinent facts. In its previously filed Reply to CMR's opposition to the Debtor's motion for leave to amend the complaint in the adversary proceeding, the Debtor responded to the same factual statement and will not repeat that response here.

Saigon stated its understanding of the applicable facts concerning the loan from CMR in the Disclosure Statement. It is not possible to resolve the factual disputes in the context of a disclosure statement hearing and there is no need to do so in order for creditors to make a decision concerning the Plan. If the court thinks it necessary, Saigon has no objection to inserting in the Disclosure Statement a summary of CMR's position with regard to the applicable facts and law.

## III.

## RESPONSE TO OBJECTIONS

A.  **CMR's Objections**

CMR objects generally that the Disclosure Statement lacks information sufficient to permit a hypothetical reasonable investor to make an informed judgment about the proposed plan. The Debtor disagrees and believes that there is adequate disclosure of the

-2-

Debtor's financial situation, litigation and other matters. CMR should not be permitted to turn the disclosure statement hearing into a mini-confirmation hearing. *See Duff v. U.S. Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (BAP 9th Cir. 1996) ("The purpose of a disclosure statement is to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan.").

The disclosure statement requirements are flexible, as "Congress expressly recognized that businesses seeking the protection of Chapter 11 cannot always be expected to have available information prepared with the same expertise and precision as that of a healthy and solvent enterprise." *In re Stanley Hotel, Inc.*, 13 B.R. 926, 930 (Bankr. Colo. 1981). Cries for additional and more detailed disclosure may in fact reduce the effectiveness of a disclosure statement in providing the information necessary to accept or reject the plan.

> A disclosure statement must be meaningful to be understood, and it must be understood to be effective. Thus, what lawyers regard as useful information based upon their experience might be meaningless verbiage in the hands of a "typical" investor. Accordingly, by overburdening a proponent's disclosure statement with information significant and meaningful to lawyers alone may result ultimately in reducing the disclosure statement to an overlong, incomprehensible, ineffective collection of words to those whose interests are to be served by disclosure. Thus, compounding a disclosure statement for the sake of a lawyer's notion of completeness, or because some additional information might enhance one's understanding, may not always be necessary or desirable, and the length of a document should not be the test of its effectiveness.

*Id., at 926, 933-34.*

In this case, the Disclosure Statement describes the matters at issue in the litigation with CMR and provides the Debtor's opinion as to the outcome of that litigation. While CMR objects that the Statement does not contain an "evaluation" of the likelihood of success, that is not necessary for the Disclosure Statement to be approved. *In re Aspen Limousine Service Inc.*, 193 B.R. 325, 335 (D. Colo. 1996) ("It is not necessary to the

adequate information standard that a disclosure statement specifically speculate as to future uncertainties such as the consequences of various possible outcomes of pending. . . litigation.").

CMR further questions whether it will be possible for the Debtor to recover $2 million from CMR and its affiliates and investors, noting that the original lender has itself filed for bankruptcy protection (though this is also pointed out in the Disclosure Statement at 15:24-25). The creditworthiness of CMR is, as noted in the Disclosure Statement, only partly relevant here. Pursuant to Bankruptcy Code section 502(d), unless avoided amounts are returned to the estate, the entities which received the $2 million during Saigon's bankruptcy case as reductions in principal on the loan will lose the ability to enforce their lien against Saigon's real property. Saigon's Plan is feasible whether it obtains the $2 million or whether it voids the CMR lien.

CMR also objects to the valuation information in the Disclosure Statement. But Bankruptcy Code section 1125(a)(1) limits the detail necessary with regard to information in a disclosure statement to that which is "reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records." That section also provides for the court to consider "the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information." Here, it is obvious that the relevant real estate market is in disarray and that appraisals are difficult to make and of less predictive value. Indeed, one of the funds managed by CMR has regularly advised its own investors that it is having great difficulty determining with any accuracy what values to put on its assets. Fore example, in December 2008, CMR Mortgage Fund II told its investors:

> Valuation of the Fund's assets has been difficult. The Fund's assets consist primarily of real estate mortgages and real estate properties we have acquired through foreclosure. . . .Much of this real estate represents land held for development which has, along with many other types of real estate properties, gone down in value significantly during this current downturn. In several cases, it has been a challenging task to arrive at current market values for properties where there are very few relative comparable sales to base a current valuation upon.

> As we have discussed in newsletters, the Manager and third party appraisers are in some cases unable to find relevant comparable sales data because there are no comparable sales. To the extent that comparable information is identified and an appraisal is completed, it is difficult for us to analyze such appraisals in determining the appropriate financial statement impact, if any. This is an industry-wide problem that has been recognized by the SEC and the US Financial Accounting Standards Board in recent publications.

*See* Form 8-K filed by CMR Mortgage Fund II, LLC on December 5, 2008, found at *http://www.secinfo.com/d11MXs.t2984.d.htm*. Given these problems there is little benefit to be gained from demanding either further specificity in the Debtor's valuations or in requiring that the Debtor retain experts to conduct another appraisal.

CMR further questions whether the Plan is feasible based on its claim that CMR will prevail in the litigation. Saigon has responded to CMR's litigation position in its Reply brief with regard to the motion for leave to amend and continues to believe it will prevail in the litigation. Further, as noted in the Disclosure Statement, the Debtor intends to request an expedited summary judgment hearing and/or trial on the portion of the litigation currently being litigated in the Bankruptcy Court against CMR and its affiliates. The Debtor suggests that the Plan confirmation hearing follow on these proceedings so that the Court's review of confirmation issues can reflect its decision in the litigation.

The Debtor also intends to eliminate issues with regard to the construction, financing and value of the real property by listing the property for sale using a real estate broker. The Debtor will shortly file its application to employ a broker to do so. Selling the property now responds to CMR's objections with regard to preserving the real property during the pendency of the litigation. In addition, it avoids the delay in realizing on the value in the property that CMR complains of—the Plan process and litigation can continue while the sale process takes place for the benefit of the Debtor and its creditors.

CMR also questions whether creditors will benefit from the Plan in light of the limited value of the property and the litigation claims in comparison to the claims asserted by CMR and the Woos. The main purpose, however, of the litigation is to determine

-5-

W02-WEST:5SS1\401411519.1
Case No. 07-40169

REPLY RE OBJECTIONS TO DISCLOSURE STATEMENT

Case: 07-40169    Doc# 262    Filed: 03/11/09    Entered: 03/11/09 17:23:56    Page 5 of 7

whether in fact CMR and its affiliates have a claim at all and whether it is secured by the property. Unless that litigation is pursued, there will be no opportunity for creditors (other than CMR) to receive any distribution on their claims.

If Saigon is successful in avoiding CMR's lien and preserving it for the benefit of the estate, then the value of the property will be shared among all creditors with allowed claims. The Woo/Ng Claimants will not have a secured claim given that the preserved CMR lien will exceed the value of the property. Recovery of part or all of the $2 million transferred to CMR and its investors would also benefit the estate's other creditors.

In sum, the proposed Plan is feasible and offers creditors other than CMR the only opportunity to obtain a dividend on their claims while treating CMR appropriately during the pendency of litigation against it.

**B.     Response to Objection Filed by Woo/Ng Claimants**

The Woo/Ng Claimants assert that they have a secured claim regardless of the value of that claim. In fact, if the Debtor is successful in setting aside and preserving the lien claimed by CMR, the Debtor can utilize the preserved lien at a valuation hearing with the Woo/Ng Claimants to establish that there is no value for their secured claim. That is because the preserved lien will be in excess of the value of the real property, leaving no value for the Woo/Ng claim.

Assuming that the Woo/Ng lien is stripped from the property, they will still have an unsecured claim. The value of that unsecured claim should be measured by the amount of consideration given by them to the Debtor, an amount the Debtor believes is less than the face amount of the notes and deeds of trust, as some of the consideration provided by Woo/Ng went to individual members of Saigon Plaza and not to benefit the entity and its property.

**C.     CMR's Analysis of the Legal Issues is Incorrect**

The Debtor responded to CMR's legal analysis in its Reply to CMR's Opposition to the Motion for Leave to Amend the complaint in the adversary proceeding. As noted there, CMR's position is not based on the actual facts and misstates the applicable law.

## IV.
## CONCLUSION

The Debtor respectfully requests that the Court approve its Disclosure Statement and permit the Debtor to proceed toward Plan confirmation.

Dated: March 11, 2009

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     /s/ Steven B. Sacks
STEVEN B. SACKS

Attorneys for Debtor and Debtor in Possession,
Saigon Plaza Association, LLC