**Signed: March 23, 2009**

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                        No. 07-40169 T
                                             Chapter 11
SAIGON PLAZA ASSOCIATION, LLC,
etc.,

    Debtor-in-Possession.
_____/

**MEMORANDUM OF DECISION**

    On March 16, 2009, the above-captioned court (the "Court") conducted a hearing on the first amended disclosure statement (the "Disclosure Statement") with regard to the second amended plan (the "Plan") in the above-captioned case. Appearances were stated on the record. At the conclusion of the hearing, the Court denied approval of the Disclosure Statement and informed the parties that both the Plan and the Disclosure Statement had serious problems. It advised the parties that it would issue a written ruling explaining the reasons for its decision in due course. The reasons for the Court's decision are set forth below.

**BACKGROUND**

Saigon Plaza Association, LLC (the "Debtor") is a California limited liability company that was formed to own and develop real property located at 380-388 Twelfth Street in Oakland, California (the "Real Property").[1] The Real Property was intended, when construction was completed, to house residential condominiums and one or more restaurants. The interest holders of the Debtor are John Le Tung ("Tung"), New Saigon Supermarket, Inc. ("New Saigon"), Hue Ly, Hue To, and Muoi Tran.[2] The interest holders all guaranteed the secured debt on the Real Property and secured their guaranty obligations with their own real property.

The Real Property was acquired by Tung in 1998 and was transferred to the Debtor in 2005. Tung is the manager of the Debtor. The Real Property is encumbered by two deeds of trust. The first priority deed of trust is held by California Mortgage & Realty, Inc. ("CMR"). The balance on the first deed of trust (the "CMR Deed of Trust") is in excess of $6 million. The second deed of trust is held by Roger Woo, Loretta Woo, and Wing Har Ng ("Woo/Ng"). The balance on the second deed of trust (the "Woo/Ng Deed of Trust") is just under $5 million.

---

[1] Originally, as a single asset case, pursuant to 11 U.S.C. § 362(d)(3), the case was on a fast track. However, the Debtor and CMR have entered into a series of agreements extending the relevant deadlines set forth therein.

[2] Hue Ly and Hue To are husband and wife and the owners of New Saigon.

The Woo/Ng Deed of Trust was previously in first priority on the Real Property. The CMR Deed of Trust was placed on the Real Property in 2005 in connection with a loan obtained to finance the planned construction. Woo/Ng agreed to subordinate the secured position of the Woo/Ng Deed of Trust to the CMR Deed of Trust. The construction funds apparently proved inadequate to complete the construction. CMR initiated foreclosure proceedings, and on January 18, 2007, the Debtor filed this chapter 11 bankruptcy case. To the Court's knowledge, no further work has been done on the project since the filing nor has it been listed for sale "as is."

CMR filed a proof of claim in the bankruptcy case. On June 21, 2007, the Debtor filed an objection to the CMR claim. On August 30, 2007, CMR filed a motion to compel arbitration of the claims asserted in the objection pursuant to an arbitration agreement entered into pre-petition by the Debtor. On September 17, 2007, the Debtor filed an adversary proceeding against CMR, A.P. 07-4149 AT (the "Adversary Proceeding").

A hearing on the motion to compel was conducted on October 1, 2007. On November 5, 2007, the Court issued a Memorandum of Decision, granting the motion to compel arbitration as to the Fifth, Sixth, and Seventh Claims for Relief and staying litigation of the remaining claims except for the First Claim for Relief. The Court has received no evidence of to what extent, if any, the arbitration has proceeded. No litigation has been conducted to date in this court with respect to the First Claim for Relief.

3

On February 12, 2008, CMR filed a motion for relief from the automatic stay so as to proceed with its foreclosure sale. A hearing was conducted on March 14, 2008. At the hearing, the Court held that the automatic stay would be vacated unless a good faith plan and disclosure statement were filed and properly noticed for hearing by June 19, 2008. Thereafter, CMR and the Debtor entered into a series of agreements continuing this deadline, which the Court approved. The parties have represented to the Court that, during this period, they were attempting to resolve their disputes. Apparently, they have concluded that resolution of these disputes is unlikely. On January 28, 2009, the Debtor and CMR entered into an agreement that CMR would be entitled to relief from the automatic stay unless the Debtor noticed a disclosure statement for hearing on March 16, 2009 or if the Court, at the hearing, found that the plan did not have a reasonable possibility of being confirmed within a reasonable time.

On February 19, 2009, the Debtor filed the Plan and Disclosure Statement. A hearing on the Disclosure Statement was noticed for March 16, 2009. Objections to the Disclosure Statement were filed by CMR, Woo/Ng, and Tung. At the hearing, the Court stated that the Plan and Disclosure Statement were both seriously deficient. It advised the parties orally of some of the defects and stated that it would issue a more detailed ruling thereafter.

**THE PLAN**

**1. Article I-Definitions**

The definition of the Effective Date of the Plan is unacceptable. The Plan states that the Effective Date is the later

4

of: (1) (more or less) 15 days after the Confirmation Order becomes final or (2) 15 days following the entry of a final order resolving the CMR Litigation. It is the latter portion of the definition that is unacceptable. First, the term CMR Litigation is not defined in the Plan. Second, the Effective Date must occur promptly after confirmation and cannot be a date left to the uncertainties of a litigation or settlement schedule.

**2. Article II–Designation of Classes of Claims and Interests**

The only problem with this section is with Class 4. First, the description is overbroad. As the Plan recognizes elsewhere, some priority claims are not classified. More seriously, if the priority claims are to be impaired, each type of priority claim must be separately classified so that their votes may be properly counted for confirmation purposes.

**3. Articles III through V**

There are no defects in Articles III through V except that the proposed treatment of the Class 1 and 2 claims does not expressly state that the holders of the claims will retain their liens unless otherwise ordered by the Court as a result of post-confirmation litigation. Section 7.8 states that property will revest in the Debtors [sic] free and clear of all liens. Although the Court does not believe that the Debtor intends by these two provisions to render the two secured claims unsecured as a fait accompli, taken together, there is an ambiguity as to the effect of confirmation on the secured claims.

5

### 4. Article VI-Means of Execution

The Plan fails to adequately describe the means by which it intends to execute the Plan: e.g., the source of funds with which it intends to pay any claims to be paid on the Effective Date and to prosecute the litigation and whether the Debtor intends to market the Real Property immediately or delay doing so until the litigation is concluded.

### 5. Article VI Effect of Confirmation of the Plan

#### A. Debtor's Liability

It is questionable whether the Plan fairly contemplates a post-confirmation operation by the Debtor so as to qualify the Debtor for a discharge. However, the provision stating that the Debtor's owners will have no liability to creditors of the Debtor is either improper or unnecessary. If the claims in question are claims against the Debtor, as owners of a limited liability company, the owners of the Debtor have no liability for them. If the claims in question are claims against the owners, confirmation of the Plan will not eliminate the owners' liability for them.

#### B. Discharge; Third Parties

The second to the last sentence of section 7.2 is contrary to Ninth Circuit law and should be deleted. See In re American Hardwood, 885 F.2d 621, 625-27 (9th Cir. 1989). The last sentence of that paragraph is disingenuous and should be deleted as well.

6

### C. Discharge, Release and Injunction

To the extent it applies to anyone other than the Debtor, the first and third paragraphs of section 7.4 are improper and should be deleted.

The second paragraph of section 7.4, which states that the Plan should be treated as an application for approval of a compromise, is also improper and should be deleted. To the extent it applies to claims against the Debtor, at most, the Plan could be treated as a compromise of claims as to those creditors who voted in favor of the Plan. The Plan may not be treated as an application to compromise claims asserted by the Debtor against creditors or other third parties in the absence of an agreement to compromise between the Debtor and those third parties and without addressing the standards set forth in In re A & C Properties, 784 F.2d 1377 (9th Cir.) *cert. denied,* 479 U.S. 854 (1986).

The fourth paragraph of section 7.4 is contrary to Ninth Circuit law and should be deleted. See In re American Hardwoods, Inc., 885 F.2d 621, 625-27 (9th Cir. 1989).

### D. Exculpation

Section 7.6 is, for the most part, beyond the Court's jurisdiction. The Court has no power to provide that confirmation of the Plan shall provide for the releases inter se of the Debtor's current managers, professionals, and consultants.

### 6. Articles VIII and IX

There are no defects in these sections.

7

### 7. Cramdown Requested

The Court does not believe that the Plan can be confirmed if Class 1 votes to reject it. The option to convey title to the Real Property to CMR does not give CMR the indubitable equivalent of its claim. If permitted to foreclose, CMR would receive payment in full or title to the Real Property free of any junior liens. If title is simply conveyed to CMR by the Debtor, the Real Property would remain subject to the junior liens.

The Court does not believe that the Plan can be confirmed over the objection of either Class 5 or 6. The Plan does not provide for payment in full with post-petition interest to these Classes. Even if this provision were changed, the Court does not believe that the Plan would qualify for cramdown. The Plan provides that the interest holders will retain their interests unless the Debtor is unable to pay the Class 6 claims in full, in which case the interests will be conveyed to Class 6. However, the transfer of the interests to Class 6 at that point is unlikely to provide any value to the Class 6 creditors let alone payment in full. Moreover, there is not even any proposal to transfer the interests to the Class 5 creditors.

### THE DISCLOSURE STATEMENT

Three sets of objections were filed with respect to the adequacy of the Disclosure Statement. The objections and the Court's rulings with respect to them are set forth below. Finally, the Court will provide its own views as to the deficiencies of the Disclosure Statement.

8

**1. OBJECTION BY WOO/NG**

The only objection to the Disclosure Statement made by Woo/Ng, the holder of a second priority deed of trust on the Real Property, is that the Disclosure Statement improperly describes its interest. It notes that the Disclosure Statement states that, if the Woo/Ng Secured Claim has no value, Woo/Ng will have an unsecured claim. Woo/Ng contends that, even if the Real Property has insufficient value to reach its claim, its claim is still a secured claim, not an unsecured one.

**Debtor's Response:** The Debtor's response to this objection assumes that Woo/Ng mistakenly believe that, if the Debtor succeeds in avoiding CMR's first priority secured claim, the Woo/Ng Deed of Trust will move into first priority and therefore attach to value in the Real Property. The Debtor asserts that, to the contrary, CMR's secured position will be preserved for the general, unsecured creditors of the estate. Thus, the Woo/Ng Deed of Trust will still not attach to any value in the Real Property and is properly characterized as unsecured. See 11 U.S.C. § 551.

**Ruling**: This objection is overruled. Clearly, at present, with the CMR Deed of Trust in first priority position, the Woo/Ng claim is subject to being avoided as fully unsecured by any value in the Real Property. See 11 U.S.C. § 506(a) and (d). However, whether the avoidance or invalidation of CMR's Deed of Trust would improve the Woo/Ng Deed of Trust depends on the legal theory used to challenge CMR's claim. Not every legal theory asserted by the Debtor would result in preservation of CMR's secured position for the benefit of

9

the estate. See 11 U.S.C. § 551. However, confirmability of the Plan rests on the votes of Woo/Ng and CMR. The Court does not believe this imperfect discussion of the nature of the Woo/Ng claim will affect how Woo/Ng or CMR would choose to cast their vote in favor or against the Plan.

**2. OBJECTIONS BY TUNG**

Tung objects that the Disclosure Statement undervalues the Real Property. In his opinion, its "as is" value is more than $5 million. He discusses the basis for this belief. He states that the Real Property has never been put on the market for sale and questions why this has not occurred during the two years the Debtor has been in bankruptcy. He notes that the Plan is an amended plan and wonders what became of the first plan of reorganization. He appears to believe that the Plan is being proposed by CMR rather than the Debtor. He accuses CMR of attempting to victimize the Vietnamese owners of the Debtor and asks the Court to investigate these matters.

**Debtor's Response:** None.

**Ruling:** The Court overrules Tung's objections as unintelligible. Tung is the responsible person for the Debtor-in-Possession. Both the original plan and this amended plan are being submitted by the Debtor-in-Possession, that is, at his direction. If Tung believes CMR is guilty of oppressive conduct, that claim can be litigated, either here or in some other court.

**3. OBJECTIONS BY CMR**

    **A. Section III Objections**

Although Section III does not place a legal label on its objection to the Disclosure Statement, the Court concludes that its narrative asserts that the Disclosure Statement contains an inadequate discussion of the feasibility of the Plan.

CMR notes that the Disclosure Statement indicates that the success of the Plan depends on the Debtor's success in its litigation against CMR. CMR asserts that this success is purely speculative and that the Disclosure Statement contains no discussion of the likelihood of the Debtor succeeding on the merits of the litigation or being able to collect any monetary judgment if successful. CMR notes that CMR Mortgage Fund, LLC, one of the defendants, is currently in its own bankruptcy case.

CMR notes that the Disclosure Statement states that, in the Debtor's opinion, the value of the Real Property is between $1 and 2 million based on a 2005 appraisal and, based on a 2007 proposal, it will take $5,000,000 to complete construction. CMR asserts that both the appraisal and the proposal are hopelessly out of date.

CMR estimates the current fair market value of the Real Property as $850,000 or less. It asserts that the existing construction will have to be demolished and the construction begun again. It notes that the Debtor has provided no information about how it might finance any additional construction. Finally, CMR objects, the Debtor has provided no support for its statement that the Real

11

Property will be worth from $8.5 to 13 million when the construction is complete.

CMR argues that, if the Debtor is unsuccessful in its litigation, its only realistic option will be to convey the Real Property to CMR. However, in the meantime, CMR will be delayed in foreclosing so as to recover some portion of its claim, and the Real Property may lose additional value. The Debtor does not propose to make any payments to CMR in the meantime nor does the Debtor appear to have any ability to do so.

The Disclosure Statement also fails to discuss the Debtor's plans for preserving the Real Property pending completion of the litigation, either physically or by paying real property tax and insurance premiums. CMR notes that the Debtor apparently intends to leave the current manager, Tung, in control of the Debtor. CMR asserts that Tung has shown little ability to successfully manage or develop the Real Property to date and thus his continued management of the construction does not bode well for its success.

Finally, CMR notes that the Disclosure Statement does not disclose any defense the Debtor has against the Woo/Ng secured claim. Therefore, even if the Debtor were completely successful in avoiding CMR's secured claim, the value of the Real Property would still be grossly insufficient to satisfy the Woo/Ng secured claim. Therefore, there is no chance that the Debtor would be entitled to retain the Real Property. Thus, the Debtor would almost certainly find itself in a liquidation or further reorganization.

**Debtor's Response:** The Debtor notes that much of CMR's objection to the Disclosure Statement consists of a lengthy description of the history of the loan relationship. It states that it has no objection to including CMR's version of that history if the Court feels it is necessary.

The Debtor contends that, contrary to CMR's objection, the Disclosure Statement does contain sufficient information to permit creditors to make an informed judgment whether to accept or reject the Plan. The Debtor contends that it is sufficient for the Disclosure Statement to describe the matters at issue in the litigation with CMR and to give the Debtor's opinion as to the likely outcome of the litigation.

The Debtor contends that it is of limited importance to discuss whether any judgment in its favor could be collected from CMR. It explains that the remedy of avoidance of CMR's lien on the Real Property, either based on the one action rule or on 11 U.S.C. § 502(d), would be self-executing.

The Debtor notes that CMR also objects to the quality of the valuation information in the Disclosure Statement. It responds to this objection by pointing out the volatile nature of the current real estate market and the difficulty of placing any accurate value on real property. With respect to CMR's objections to the lack of any discussion of financing for future construction, the Debtor notes that it intends to list the Real Property for sale promptly.

The Debtor notes that CMR questions what benefit will be gained from proceeding with the Plan given the limited value of the Real

13

Property as compared to the amounts of the two secured claims. The Debtor asserts that the value of the Plan and the litigation it envisions is to avoid CMR's liens so as to free up value for the unsecured creditors.

**Ruling:** This objection is sustained.

The Debtor's version of the loan history is currently set forth in the Disclosure Statement. To be adequate, this section would have to be revised to include CMR's version of the history as well. A particularly significant omission from the Debtor's version is the pre-petition forbearance agreement entered into with CMR which apparently released claims by the Debtor against CMR.

The Court also agrees with CMR that the Disclosure Statement does not contain an adequate discussion of the litigation or of the value of the Real Property. When there are disputes concerning critical elements of a chapter 11 case, the Disclosure Statement should contain a disclosure of both sides of the dispute, not merely the Debtor's side.

Finally, the Debtor's statement that the benefit to be gained from proceeding with the litigation is to free up value in the Real Property for the benefit of the general, unsecured creditors is not persuasive. The Debtor should disclose who the general, unsecured creditors are, the relative amounts of their claims, and in what fashion they would be benefited. As the Court stated at the Disclosure Statement hearing, it appears that the unsecured creditors to be "benefited" would principally be the same creditors rendered unsecured by avoidance of their liens.

14

**B. Section IV Objections**

CMR asserts that, in any event, the Debtor's litigation claims are without merit and the Debtor is unlikely to be successful in the litigation upon which the success of the Plan depends. CMR notes that the Debtor contends that CMR did not have a perfected security interest in the trust account in which the construction funds were held. CMR explains the basis for its contention that it did have a perfected security interest, citing various Code sections of the California Commercial Code and two bankruptcy court decisions: <u>In re Gemini at Dadeland</u>, 24 B.R. 57, 59 (Bankr. S.D. Fla. 1982) and <u>In re O.P.M. Leasing Services, Inc.</u>, 46 B.R. 661 (Bankr. S.D.N.Y. 1985).

CMR notes that the Debtor has filed a motion to amend its adversary complaint to add a Tenth Claim for Relief, alleging a one action rule violation under Cal. Civ. Proc. Code § 726(a). It notes that a recent Ninth Circuit Bankruptcy Appellate Panel case, <u>Kearns v. Transamerica Home Loan</u>, 314 B.R. 819, 821 (Bankr. 9th Cir. 2004) which held that conduct such as CMR's did not violate the one action rule.

**Debtor's Response:** The Debtor responds that CMR's legal analysis is incorrect. The analysis is based on a faulty statement of the facts and a misapplication of the law. The Debtor contends that it has already responded to these arguments in its reply to CMR's opposition to its motion to amend the complaint in the adversary proceeding.

**Ruling:** This objection is overruled. The Court is unable to determine whether the Debtor's claims against CMR have any merit. It

has never been provided with the loan documents. However, the Court doubts that the lack of a more thorough discussion of this issue would affect whether Woo/Ng or CMR voted to accept or reject the Plan.

**4. COURT'S COMMENTS**

As stated at the hearing on the Disclosure Statement, the Plan makes no sense to the Court. Clearly, the Debtor has no equity in the Real Property. The stated purpose of the Plan is to avoid the two secured claims on some basis or another so as to free up value for the unsecured creditors. However, in the Disclosure Statement, the Debtor states that the unsecured claims filed against the estate total less than $3,000 and that the bulk of the unsecured claims will be the deficiency claims of the two secured creditors. It is unclear how the Debtor intends to finance the litigation. More important, it is unclear why the Debtor would wish to finance the litigation. Clearly, the outcome of the litigation would merely affect who received a greater share of any proceeds from the sale of the Real Property: i.e., CMR and Woo/Ng.

The Court assumed that the purpose of the Plan was to obtain releases for the guarantors. As stated at the hearing, those provisions are contrary to the Bankruptcy Code and to Ninth Circuit law. Thus, they may not be retained in the Plan. However, at the hearing, counsel for the Debtor expressed a willingness to strip any such provisions from the Plan. The Court sees no other purpose to be served by confirming the Plan and permitting current equity holders

16

to remain in control of the Real Property and in charge of litigating claims in which they have no economic stake.

## CONCLUSION

The Court finds that the Disclosure Statement is deficient in many respects and that the Plan has serious deficiencies. Moreover, the Court finds that there is no reasonable possibility that the Debtor will be able to obtain confirmation of the Plan within a reasonable period of time. Therefore, pursuant to the Debtor's stipulation with CMR, CMR is entitled to relief from the automatic stay. Counsel for CMR is directed to submit a proposed order in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

Steven B. Sacks
Sheppard, Mullin, Richter and Hampton
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111

Jeffery D. Trowbridge
180 Grand Ave., Ste. 1550
Oakland, CA 94612

Razi A. Shah
2140 Shattuck Ave., Ste. 411
Berkeley, CA 94704

Darya Sara Druch
one Kaiser Plaza, Ste. 480
Oakland, CA 94612

Marc Alan Fong
Law Offices of Fong & Fong, APC
1141 Harbor Bay Parkway, Ste. 206
Alameda, CA 94502-2218